UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH H. PARKER,                              Case No. 12-14316

            Plaintiff,                    Bernard A. Friedman
v.                                            United States District Judge

COMMISSIONER OF SOCIAL SECURITY,              Michael Hluchaniuk
                                              United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 14)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On September 28, 2013, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Bernard A. Friedman referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for supplemental security income. (Dkt. 2). This matter is before the Court on cross-motions for summary judgment. (Dkt. 12, 14).

    B.   <u>Administrative Proceedings</u>

Plaintiff filed the instant claim on March 29, 2010, alleging that he became

disabled beginning March 1, 2010. (Dkt. 8-2, Pg ID 51). The claim was initially denied by the Commissioner on August 2, 2010. (Dkt. 8-2, Pg ID 51). Plaintiff requested a hearing and on June 7, 2011, plaintiff appeared before Administrative Law Judge (ALJ) Oksana Xenos, who considered the case de novo. In a decision dated August 5, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 8-2, Pg ID 51-63). Plaintiff requested a review of this decision. The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on September 12, 2012, denied plaintiff's request for review. (Dkt. 8-2, Pg ID 35-40); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.    FACTUAL BACKGROUND

A.    <u>ALJ Findings</u>

Plaintiff was 22 years old on the alleged onset date.  Plaintiff has no past relevant work.  (Dkt. 8-2, Pg ID 62).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the application date.  (Dkt. 8-2, Pg ID 53).  At step two, the ALJ found that plaintiff had the following severe impairments: depression, anxiety, and a history of polysubstance abuse.  (Dkt. 8-2, Pg ID 53).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 8-2, Pg ID 54).  The ALJ concluded that plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he can perform unskilled, routine, non-production-oriented work involving one- or two-step instructions, occasional contact with the general public, coworkers and supervisors, and minimal changes in the work setting.

(Dkt. 8-2, Pg ID 55-56).

At step four, the ALJ found that plaintiff did not have any past relevant work.  (Dkt. 8-2, Pg ID 62).  At step five, the ALJ concluded that there were a

significant number of jobs in the national economy that plaintiff could perform, given his RFC.  Based on the foregoing, the ALJ concluded that plaintiff was not under a disability from the claimed onset date through the date of the decision. (Dkt. 8-2, Pg ID 62-63).

      B.    <u>Plaintiff's Claims of Error</u>

Plaintiff's first claim of error is that the ALJ did not properly consider plaintiff's history of substance abuse.  In analyzing plaintiff's claim, plaintiff asserts that the ALJ repeatedly discounted or discredited his mental problems because they were impacted by his drug use.  For example, she wrote that "the records also show that when the claimant consistently attended his appointments, took his medications, and stayed away from drugs, his condition stabilized."  (Tr. 23).  She further discounted low GAF scores because "these were also during exacerbations of his symptoms due to substance abuse and non-compliance with medications.  Therefore, they are not indicative of the claimant's usual level of mental functioning." (Tr. 26).  In addition, she wrote, "As noted above, the claimant has indicated that he only had hallucinations when he was using drugs." (Tr. 25).

However, plaintiff points out that the regulations require the ALJ to first determine whether the claimant is disabled using the normal five-step sequential evaluation process, without discounting or disregarding the assumed effects of

substance use disorders.  20 CFR § 416.935(a).  Only then may the ALJ determine what limitations would remain in the absence of alcoholism or drug addiction, so that she could proceed to decide whether claimant's substance abuse was a contributing factor material to the disability.  20 CFR § 416.935(b).  "To find that drug addiction is a contributing factor material to the determination of disability without first finding the claimant disabled, as the ALJ did here, is to put the cart before the horse."  *Williams v. Barnhart*, 338 F.Supp.2d 849, 962-863 (M.D. Tenn. 2004).  According to plaintiff, this has been held to be reversible error in and of itself.  *Id*; *Drapeau v. Massanari*, 255 F.3d 1211, 1214-1215 (10th Cir. 2001); *Brueggemann v. Barnhart*, 348 F3d 689, 693-695 (8th Cir. 2003).  As a result, at a minimum, plaintiff contends that this case should be remanded to the ALJ for consideration of the issue of whether plaintiff was disabled, including the impact of his substance abuse.  Only after a finding of disability should she then begin to exclude problems due solely to that substance abuse.

Plaintiff's second claim of error is that the ALJ purportedly gave "significant weight" to the state agency psychological consultant but her RFC assessment omits a critical part of that consultant's opinion.  The ALJ gave significant weight to the opinions of Dr. Leonard Balunas.  (Tr. 26, 84-87).  The ALJ wrote that "[t]he assessed residual functional capacity is generally consistent with the state agency psychological consultant's opinion."  (Tr. 26).  However,

that was not the case with respect to an important limitation the ALJ herself actually noted: "The state agency psychological consultant, upon review of the evidence of record, determined that the claimant can carry out tasks that involve one- and two-step instructions, *require only a limited need for sustained concentration*, and involve only brief, incidental contact with the general public..." (Tr. 26) (emphasis supplied in plaintiff's brief). According to plaintiff, this limitation was not accounted for in the ALJ's RFC assessment. That assessment referenced "unskilled, routine, non-production-oriented work involving one- or two-step instructions, [with] occasional contact with the general public, coworkers and supervisors, and minimal changes in the work setting." (Tr. 22). This assessment acknowledges limitations as to the form of the job, plaintiff's ability to learn it, and potential interaction with others on the job, but according to plaintiff, does not address as well whether plaintiff could maintain adequate concentration and attention to attend to the required tasks in an appropriate, sufficient, and safe manner.

The Sixth Circuit has indicated that a failure to include express limitations concerning concentration in the hypothetical posed to a VE could invalidate that hypothetical and the testimony offered in response. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). In *Edwards v. Barnhart*, 383 F Supp 2d 920, 930 (E.D. Mich. 2005), the Court found that moderate limitations of concentration,

persistence, and pace may leave a claimant "unable to meet quotas, stay alert, or work at a consistent pace, even at a simple unskilled routine job."  As a result, the Court held that a limited hypothetical which failed to explicitly set forth those limitations was inadequate when it came to some of the very same types of jobs at issue in this case.  Furthermore, plaintiff points out that the VE testified that plaintiff's ability to concentrate and stay "on task" while working was a critical factor in his ability to perform any work.

Plaintiff also notes that the ALJ herself found that plaintiff had moderate limitations in concentration, persistence, or pace, including "problems with concentrating and focusing due to these symptoms."  (Tr. 21).  In addition, plaintiff's grandmother testified that he would try to help her, but that he would forget what he was doing even while performing such undemanding tasks as carrying out trash.  (Tr. 56).  She stated, "If you tell him more than two things, one's not going to get done."  (Tr. 56).  The ALJ dismissed this latter testimony as "based in large part upon the claimant's subjective complaints" (Tr. 27), but plaintiff points out that this behavior was observed by the grandmother personally, not just described to her by plaintiff.  While the ALJ held that such personal observations were "not inconsistent" with her RFC assessment, this particular observation was never accounted for in that assessment.  And, according to plaintiff, perceptible weight must be given to the testimony of lay witnesses where

7

consistent with medical evidence. *Lashley v. Sec'y of HHS*, 706 F2d 1048, 1054 (1983). According to plaintiff, the ALJ explicitly found that plaintiff had difficulties with concentration, persistence, and pace (Tr. 16), but did not explain how those difficulties would impact upon his ability to work, which is reversible error.

C.   The Commissioner's Motion for Summary Judgment

Plaintiff argues that the ALJ failed to properly evaluate his history of drug use because she did not consider whether his drug addiction was a material factor. According to the Commissioner, plaintiff is wrong. Section 1614(a)(3)(J) of the Act provides that a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." In evaluating a claimant who has a substance abuse problem, an ALJ must first determine whether that claimant is disabled after considering all of his impairments, including drug or alcohol addiction. 20 C.F.R. § 416.935. The ALJ "must then determine whether the claimant would continue to be disabled if he or she stopped using drugs or alcohol; that is, we will determine whether [drug or alcohol addiction] is 'material' to the finding that the claimant is disabled." Social Security Ruling (SSR) 13-2p, 2013 WL 621536, at *2; see also 20 C.F.R. § 416.935. Here, the Commissioner contends that the ALJ reasonably determined that, even when factoring his

substance abuse, plaintiff was not disabled.  Accordingly, the ALJ was not

required to consider whether plaintiff's drug addiction was material to a finding of

disability.

The Commissioner also contends that this case is distinguishable from

*Williams v. Barnhart*, 338 F.Supp.2d 849 (M.D. Tenn. 2004), which plaintiff relies

on in support of his argument.  In that case, the ALJ found that plaintiff's drug

addiction was "a contributing factor material to the determination of disability

without first finding the claimant disabled."  *Id*. at 862.  In the present case, the

ALJ did not make a similar finding.  Rather, the ALJ considered plaintiff's drug

addiction throughout the five-step sequential analysis and determined that plaintiff

was not disabled.  While the ALJ noted that plaintiff's condition somewhat

improved when he was not using drugs, the Commissioner maintains that such a

finding is not equivalent to "excluding" his drug abuse, as plaintiff contends.  For

example, the ALJ noted that "when the claimant consistently attended his

appointments, took medications, and stayed away from drugs, his condition

stabilized."  (Tr. 23).  The ALJ also noted that when plaintiff was admitted to the

Behavioral Center for America in September 2010, "he was non-compliant with

his medication at that time, and he was using drugs." (Tr. 26, citing Tr. 1033-34).

Plaintiff received a Global Assessment of Functioning (GAF) score of 20 on

admission to the center, but on discharge four days later, his score improved to 50,

which is at the borderline between serious and moderate symptoms or limitations. (Tr. 1004). According to the Commissioner, that the ALJ considered the effect of plaintiff's drug use on his GAF score is not tantamount to finding that plaintiff's drug addiction was "a contributing factor." Rather, the record reflects that the ALJ properly evaluated plaintiff's impairments and correctly followed the procedure for evaluating disability claims when drug addiction is involved. After completing this analysis, the Commissioner contends that the ALJ reasonably determined that plaintiff's impairments, including his drug use, were not disabling. Thus, the Commissioner urges the Court to conclude that the ALJ's finding should not be disturbed.

Plaintiff also argues that the ALJ's residual functional capacity (RFC) finding did not address whether he could maintain adequate concentration and attention to work. In reviewing the medical evidence, the ALJ gave significant weight to the opinion of Leonard C. Balunas, Ph.D., who reviewed plaintiff's medical record at the request of the state agency. (Tr. 26). The Commissioner points out that state agency doctors are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." *See* 20 C.F.R. § 416.927(f)(2)(i)4. Dr. Balunas opined: The claimant is able to understand, carry out, and remember simple instructions; make judgments that are commensurate with the functions of unskilled tasks i.e .,

work-related decisions; respond appropriately to supervision, coworkers, and work situations; and deal with most changes in routine work settings.  There are no problems with attention and there is sufficient concentration to perform simple 1-2 step tasks all on a routine and regular basis.  (Tr. 87).  The ALJ adopted Dr. Balunas's opinion and found that, despite his concentration problems, plaintiff retained the capacity to perform unskilled, routine, non-production oriented work involving one- or two-step instructions; occasional contact with the general public, co-workers, and supervisors; and minimal changes in the work setting. (Tr. 21-22).

Plaintiff asserts that the ALJ's RFC finding did not adequately account for the ALJ's finding at step two that he had "moderate" limitations in the broad functional area of concentration, persistence, or pace.  According to the Commissioner, plaintiff confuses the purpose of rating a claimant's functioning at step two of the sequential evaluation.  The limitations identified at step two are not an RFC assessment but are used to rate the severity of mental impairments.  SSR 96-8p, 1996 WL 374184, *4.  As the ALJ explained, forming an RFC assessment requires a more detailed assessment by itemizing various functions contained in the broad categories that she considered at step two.  (Tr. 21).  The Commissioner contends that the ALJ reasonably considered the medical and other evidence in assessing plaintiff's impairments, and translated plaintiff's moderate concentration problems into a detailed RFC assessment that accounted for the manner in which

plaintiff's symptoms affected his ability to perform work activities. The
Commissioner also asserts that plaintiff's reliance on *Edwards v. Barnhart*, 383
F.Supp.2d 920 (E.D. Mich. 2005), is misplaced. Although the court in *Edwards*
found that a limitation to "simple, unskilled, routine" work did not account for the
complainant's difficulty with working at a "consistent pace" under those specific
facts, it recognized that in *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), the
Sixth Circuit upheld an ALJ's RFC finding based on psychiatrists' opinions.
*Edwards*, 383 F.Supp.2d at 929-30. Here, the ALJ's RFC finding was based on
Dr. Balunas's opinion, which accurately accounted for plaintiff's limitations in
concentration. (Tr. 23, 87). Significantly, the Commissioner contends that
plaintiff has failed to point to any medical opinion showing that he had greater
limitations than the ALJ found.

The Commissioner also maintains that plaintiff's reliance on *Hess v.
Comm'r of Soc. Sec.*, 2008 WL 2478325 (E.D. Mich. 2008), presents an
incomplete and inaccurate portrayal of the cases in this jurisdiction. As this Court
noted, "[t]here are cases ordering remand where an ALJ's hypothetical does not
include a specific reference to moderate limitations in concentration or pace and
only limits the hypothetical individual to unskilled work or simple, routine tasks
— but also other cases that have found that an ALJ formed an accurate
hypothetical by limiting the claimant to unskilled work and omitting a moderate

concentration or pace limitation." *Roberts v. Comm'r of Soc. Sec.*, 2011 WL 4407221, at *8 (E.D. Mich. 2011) (collecting cases). The *Roberts* court declined to adopt a "bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of simple, routine and repetitive work, but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Id*. Here, the medical record, including Dr. Balunas's opinion, supports the ALJ's RFC assessment.

Plaintiff also suggests that the ALJ did not account for the testimony of his grandmother, who stated that plaintiff had difficulty "if you tell him more than two things." (Tr. 59). Plaintiff has not offered any explanation as to why he believes his grandmother's testimony is inconsistent with the ALJ's RFC finding. The ALJ limited the complexity and type of work plaintiff could perform by restricting him to unskilled, routine, non-production oriented work involving one- or two-step instructions and minimal workplace changes. (Tr. 21-22). To the extent plaintiff's grandmother testified that he had problems with others, the Commissioner argues that the ALJ's RFC accommodated these alleged problems by limiting plaintiff to only occasional interaction with the public, co-workers, and supervisors. (Tr. 21-22). Thus, the Commissioner concludes that the ALJ properly concluded the grandmother's testimony was consistent with her RFC

finding.  (Tr. 27).

At the administrative hearing, the ALJ asked the vocational expert whether a hypothetical individual who shared plaintiff's RFC and vocational background could work.  (Tr. 65).  The vocational expert testified that plaintiff could perform thousands of jobs in both the regional and national economy.  (Tr. 65).  The Commissioner contends that the ALJ reasonably relied on this testimony in finding that plaintiff was capable of performing a significant number of jobs. (Tr. 28).  The vocational expert also testified that a hypothetical individual would be unable to work if he were off-task up to 20% of the workday and could not sustain the concentration, persistence, or pace necessary to complete an eight-hour workday five days a week on a regular continuing basis.  (Tr. 66).  According to the Commissioner, while plaintiff suggests that this testimony should direct a finding that he is disabled, he does not argue that the record demonstrated that he had such limitations.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (citation and internal quotation omitted), quoted in *Rice v. Comm'r of Soc. Sec.*, 169 Fed.Appx. 452, 454 (6th Cir. 2006).  The Commissioner maintains that because the evidence did not demonstrate that plaintiff would be

Report and Recommendation
Cross-Motions for Summary Judgment
*Parker v. Comm'r*; Case No. 12-14316

"off-task" for 20% of the day, the ALJ did not err in declining to rely on the vocational expert's testimony based on that assumption.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

　　　　If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

Report and Recommendation
Cross-Motions for Summary Judgment
*Parker v. Comm'r*; Case No. 12-14316

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

Report and Recommendation
Cross-Motions for Summary Judgment
*Parker v. Comm'r*; Case No. 12-14316

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Report and Recommendation
Cross-Motions for Summary Judgment
*Parker v. Comm'r*; Case No. 12-14316

C.    Analysis and Conclusion

In 1996, the Social Security Act was amended to provide that "[a]n individual shall not be considered disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  The Commissioner implemented this standard by enacting 20 C.F.R. §§ 404.1535 and 416.935, which "clearly" require that the five step sequential evaluation process, found in 20 C.F.R. § 404.1520, be followed in the adjudication of disability "before any consideration is given to whether drug addiction [or alcohol abuse] is the cause of such disability." *Williams v. Barnhart*, 338 F.Supp.2d 849, 862 (M.D. Tenn. 2004), citing *Drapeau v. Massanari*, 255 F.3d 1211, 1214-15 (10th Cir. 2001); *see also Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003); *Wilby v. Astrue*, 2010 WL 2802713, at *9 (N.D. Ohio 2010); *Goins v. Astrue*, 2010 WL 55687, at *5 (N.D. Ohio 2010); *Stroud v. Comm'r of Soc. Sec.*, 2011 WL 4576032, *11-12 (E.D. Mich. 2011). Thus, "[t]o find that drug addiction is a contributing factor material to the determination of disability without first finding the [plaintiff] disabled ... is to put the cart before the horse."  *Williams*, 338 F.Supp.2d at 862.

If the five step sequential evaluation process, without removing the effects of substance abuse disorders from consideration, indicates that the plaintiff is not

disabled then there is no need to continue with the substance abuse materiality analysis of 20 C.F.R. §§ 404.1535 and 416.935. *Brueggemann*, 348 F.3d at 694-95 ("If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent."); *see also Fastner v. Barnhart*, 324 F.3d 981, 986 (8th Cir. 2003); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001); *Williams*, 338 F.Supp.2d at 863. Once the gross total of the plaintiff's exertional and non-exertional limitations, including the effects of his substance abuse, reveal that the plaintiff is disabled, the adjudicator must determine whether his substance abuse is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a).

In this case, the Commissioner argues that there was no error because the ALJ did not find that plaintiff was disabled. Thus, the Commissioner contends that it was not necessary for the ALJ to determine whether plaintiff's substance abuse was a contributing material factor to plaintiff's disability. While this argument has some appeal, the Commissioner appears to be missing the point. What the ALJ failed to do is analyze plaintiff's impairments "using the standard five-step approach *without segregating out any effects that might be due to substance use disorders.*" *Williams*, 338 F.Supp.2d at 863 (emphasis added). This

determination must be based on substantial evidence of plaintiff's medical limitations "without deductions for the assumed effects of substance use disorders."  *Id*., quoting *Brueggeman*.  And, despite the Commissioner's arguments to the contrary, it is clear that throughout the ALJ's decision, she took into account the specific effects of plaintiff's substance abuse disorder, concluding that plaintiff was "better" when not abusing drugs.

For example, while the ALJ found that plaintiff had a "history of substance abuse," it was clear from the decision that she believed he was abusing drugs after the onset date and took his substance abuse into account during the entire five step analysis.  (Dkt. 8-2, Pg ID 57) ("His treatment records over the next several years show that he missed many appointments, was only sporadically compliant with his medications, and had continuing substance abuse issues, which at times culminated into readmission into residential treatment"); ("However, the records also show that when the claimant consistently attended his appointments, took his medications, and stayed away from drugs, his condition stabilized."); (Dkt. 8-2, Pg ID 57-58) ("At various times during his treatment at the center, the claimant was diagnosed with a mixed depression, bipolar disorder, and polysubstance abuse, including cocaine, marijuana, and inhalants."); (Dkt. 8-2Pg ID 58) ("Although the claimant reported having hallucinations in the past, he indicated that they were drug-related. The claimant was reported to be non-compliant with his medications,

and he had used marijuana the week before his admission.") (internal citations omitted); (Dkt. 8-2, Pg ID 59) ("In sum, the above records show that the claimant has periods of exacerbation of his mental health symptoms, which occur when he is not taking his medications, when he engages in substance abuse, or when triggered by outside stressors such as family or legal issues. However, when the claimant consistently attends his appointments and takes his medications as prescribed, his symptoms return to baseline, and he is described as doing well."). The ALJ also rejected the opinions of a psychological consultant, Dr. Hasan because the diagnosis of schizoaffective disorder appeared to be based on plaintiff's report of intermittent hallucinations, which the ALJ noted only occurred "when he was using drugs." (Dkt. 8-2, Pg ID 59). The ALJ also found that plaintiff was not candid with Dr. Hasan about his drug use, which the ALJ said was "ongoing at that time." *Id*. The ALJ concluded that Dr. Hasan "could not evaluate the effects of this abuse upon the claimant's symptoms and functioning." (Dkt. 8-2, Pg ID 59-60). The ALJ also noted that plaintiff's GAF scores improved when he was compliant with his medications and not using drugs. (Dkt. 8-2, Pg ID 60).

In the instant case, the ALJ's analysis is highly problematic because she failed to even acknowledge the appropriate regulation and certainly did not follow the prescribed procedure. While the Commissioner may be correct that it was

appropriate for the ALJ to take plaintiff's drug use and lack of candor regarding his drug use into account when examining plaintiff's credibility, it is clear from the above that the ALJ was taking plaintiff's substance abuse into account at every step of the analysis, which is contrary to the statute and accompanying regulations. *See Brueggemann*, 348 F.3d at 693 ("In truth, the ALJ's failure to cite 20 C.F.R. § 404.1535 anywhere in his decision was not a mere drafting oversight, but accurately reflected his failure to follow the procedures prescribed there.  The Commissioner has duly promulgated regulations in this area, which the ALJ may not silently disregard.").

In addition, while Dr. Balunas opined that plaintiff's substance abuse was not material, the ALJ did not cite or rely on this aspect of Dr. Balunas' opinion in her decision.  Again, this does not excuse, in the first place, the ALJ's failure to engage in the proper analysis without considering plaintiff's substance abuse.  *See Major v. Astrue*, 2011 WL 3566778, *8 (S.D. Ohio 2011) ("[T]he ALJ erred by prematurely discounting Plaintiff's symptoms and improperly using Plaintiff's substance abuse as a basis both for minimizing Plaintiff's symptoms and for rejecting Plaintiff's treating physician's opinions.").  And, in the view of the undersigned, it is not the province of the Court to pluck a conclusion from the state agency consultant's report on which the ALJ neither relied nor discussed in order to salvage the ALJ's decision.  This is no substitute for a thorough and

reasoned analysis under the statutory scheme governing substance abuse as to whether plaintiff is disabled *without* the consideration of substance abuse and, if necessary, whether plaintiff's substance abuse is a contributing factor material to disability.  Such determinations are complex and require a thorough and reasoned explanation.  *See e.g.*, *Mathious v. Barnhart*, 490 F.Supp.2d 833, 847 n. 14 (E.D. Mich. 2007) ("The ALJ is not a medical doctor ... and is therefore not qualified to determine whether someone's functional limitations and IQ scores are the product of alcohol or drug usage without some competent evidence or more thorough explanation.").  For these reasons, a remand is required so that the ALJ may undertake the correct analysis under the statute and regulations governing the consideration of substance abuse.  Given the foregoing conclusion, plaintiff's RFC and credibility will necessarily have to be revisited on remand.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 14, 2014                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on <u>February 14, 2014</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Norton J. Cohen, Vanessa Miree Mays, AUSA, and Niranjan Emani, Social Security Administration</u>.

s/Tammy Hallwood          
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
